THE WILLIAM CHURCHILL.

(District Court, E. D. New York. July 9, 1900.)

1. COLLISION—CONTRIBUTORY FAULT—BURDEN OF PROOF.
   Where the fault of the burdened vessel was the primary cause of a col-
   lision, she must produce reasonably clear evidence to sustain a plea of
   contributory fault on the part of the privileged vessel on the ground that
   the latter, in trying to avoid the threatened collision, departed from her
   course.

2. SAME—SAILING VESSELS CROSSING.
   A schooner sailing free *held* in fault for a collision with one on a crossing
   course, sailing closehauled, because of her failure to maintain a proper
   lookout; and evidence to show contributory fault in the privileged vessel
   *held* insufficient.

In Admiralty. Suit for collision.

James J. Macklin and L. R. S. Gove, for the Hencken.

Carpenter & Park, for the William Churchill.

THOMAS, District Judge. The schooners William Churchill, in
cargo, north bound, and Freddie Hencken, unladen, south bound,
collided about 6 o'clock in the afternoon of January 22, 1899, north of
Barnegat, on the Atlantic coast. The wind was westerly. The
Churchill was sailing free on a course north by east one-half east; the
Hencken was closehauled on a course southwest by south one-half
south. Both vessels carried proper lights, and the lights as well as
the vessels themselves could be seen at a sufficient distance to avoid
accident. The evidence shows conclusively that a proper lookout was
not kept on the Churchill, and that she did not discover the Hencken
until the danger of a collision was considerable, and that she was
then roused to activity by the horn sounded on the Hencken. Hence
the Churchill, by her negligence, contributed to the injury of the
Hencken, and, as she was the burdened vessel, she alone must re-
spond for the damage, unless the Hencken, without excuse, failed to
keep her course. The substance of the claim of the Churchill is that
she did not see the Hencken earlier on account of the obstruction

caused by another schooner, and that when she did discover the Hencken the latter's red light appeared a little on the Churchill's starboard bow, and that the Churchill's jibboom was heading for about the foremast of the Hencken; that the Churchill's wheel was put hard up, and that she went off several points, the spanker sheet being let go to aid the maneuver; that the Churchill struck the Hencken on her starboard side, near the main rigging, within a point of abeam; that the collision was caused by the failure of the Hencken to keep her course, and by reason of her paying off some three points to avoid the collision, which maneuver was undertaken by the Hencken as soon as the Churchill tried to go off. If the Churchill went off, and the Hencken followed in the same direction,—of which there is much evidence,—the Hencken was negligent unless she acted in extremis. But the evidence of the Hencken is that she kept her course without deviation, and her evidence is as credible as that of the Churchill, although certain evidence of the mate is unacceptable. He states that from first seeing her the Churchill "kept off, and showed her red light, and she luffed up, and showed her green light, and then kept off, and showed her red light again." This may be true, but he further states that when she showed her green light she fully crossed the Hencken's bow, so that her stern cleared by about 60 feet, and that she "turned around and showed her red light, and shut out her green" light, and struck the Hencken amidships. This seems impossible. But the mate's erroneous estimate of the distance is not controlling. The captain of the Hencken is dead, and the court is deprived of his evidence, but the truth seems to be that the Churchill was, in the first instance, the offender, and the burden is upon her to show that the Hencken changed her course. Considering the evidence with all its confusion and inconsistencies, the court is not convinced that the Hencken changed her course, and therefore the fault must rest with the Churchill, who was clearly a wrongdoer. Her negligence was the primary cause of the accident, and without reasonably clear evidence she should not be permitted to bring the Hencken into fault upon the plea that the latter, in trying to avoid a threatening collision, departed from her duty to keep her course. There should be a decree for the damages caused the Hencken, and dismissing the cross libel, with costs